IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MONTANA

BUTTE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CR 07-28-BU-DWM |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | ORDER |
| | ) | |
| WALTER MERLE OVERTON, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

## I.  Introduction

Defendant Walter Merle Overton moves the Court to dismiss Counts I and II of the Indictment in the above-captioned matter. Overton was charged in a four-count indictment with two counts of sexual exploitation of children, in violation of 18 U.S.C. §§ 2251(a) & (b); receipt of child pornography, in violation of 18 U.S.C. § 2252A(a)(2); and possession of child pornography, in violation of 18 U.S.C. § 2252A(a)(5)(B).  To support the charges in Counts I and II, the government contends Overton induced his seventeen-year-old step daughter to engage in sexually explicit

1

conduct involving nudity or partial nudity for the purpose of producing five photographs.[1]  Overton contends his prosecution for these crimes constitutes an unconstitutional exercise of Congress' Commerce Clause power.  In light of the Supreme Court's recent decision in Gonzales v. Raich, 545 U.S. 1 (2005), I find Overton's argument unpersuasive.  Because Overton's conduct substantially affects interstate commerce, it may be regulated by Congress.

## II.  Analysis

Section 2251(a) provides:

Any person who employs, uses, persuades, induces, entices, or coerces any minor to engage in, or who has a minor assist any other person to engage in, or who transports any minor in interstate or foreign commerce, or in any Territory or Possession of the United States, with the intent that such minor engage in, any sexually explicit conduct for the purpose of producing any visual depiction of such conduct, shall be punished as provided under subsection (e), if such person knows or has reason to know that such visual depiction will be transported in interstate or foreign commerce or mailed, if that visual depiction was produced using materials that have been mailed, shipped, or transported in interstate or foreign commerce by any means, including by computer, or if such visual depiction has actually been transported in interstate or foreign commerce or mailed.

18 U.S.C. 2251(a).  Section 2251(b) similarly prohibits a parent or legal guardian of a minor from knowingly permitting the minor

---

[1] Overton does not seek dismissal of Counts III and IV of the Indictment.  These counts charge Overton with receipt and possession of other images of child pornography not involving his step daughter.

to engage in such conduct.  Overton was charged with inducing his step daughter to engage in sexually explicit conduct for the purpose of producing a visual depiction of such conduct.  The child pornography Overton produced was not transported in interstate commerce or mailed.  Instead, the "jurisdictional hook" that brings Overton's conduct within the ambit of the statutes is the fact that the child pornography was produced using materials that were mailed, shipped, or transported in interstate commerce.

Overton contends his conduct is similar to that addressed by the Ninth Circuit in United States v. McCoy, 323 F.3d 1114 (9th Cir. 2003).  In that case, the defendant was charged with possession of child pornography based on her possession of a single photograph of herself and her ten-year-old daughter partially unclothed, posing side by side, with their genital areas exposed.  Id. at 1115.  The defendant possessed the photograph for her own personal use, with no intention of distributing it in interstate commerce.  Id.  The camera and film used to take the photograph, however, were manufactured outside of the defendant's state of residence, bringing the defendant's conduct within the confines of the child pornography statute.  Id. at 1117.  The court applied the four-part inquiry set forth in United States v. Morrison, 529 U.S. 598, 610-12 (2000), for determining whether an intrastate activity substantially affects

3

commerce and concluded prosecution of the defendant violated the Commerce Clause.  McCoy, 323 F.3d at 1119.  In so doing, the court distinguished Wickard v. Filburn, 317 U.S. 111 (1942), in which the Supreme Court determined the Commerce Clause permits Congress to regulate wheat produced solely for a farmer's personal use.  Id.  The Court reasoned the farmer's production of wheat affects interstate commerce because "it supplies a need of the man who grew it which would otherwise be reflected by purchases in the open market.  Home-grown wheat in this sense competes with wheat in commerce."  Id. at 128.  In distinguishing Wickard, the McCoy court observed that recent Supreme Court cases had limited the reach of Wickard to activity the commercial or economic character of which is apparent.  McCoy, 323 F.3d at 1120 (citing United States v. Lopez, 514 U.S. 549, 558 (1995), and Morrison, 529 U.S. at 611 n.4).  The court determined simple intrastate possession of home-grown child pornography not intended for distribution or exchange is not economic activity, and thus, the reasoning of Wickard was not applicable.  Overton urges the Court to adopt the reasoning in McCoy and conclude his conduct, which involved the production of child pornography that was not transported in interstate commerce or mailed, does not substantially affect interstate commerce and thus cannot be regulated by Congress under the Commerce Clause.

As an initial matter, the instant case is distinguishable

4

from McCoy.  The defendant in McCoy was charged with mere intrastate possession of child pornography; Overton is charged with inducing a minor to engage in sexually explicit conduct for the purpose of producing child pornography.  Production of child pornography is far more likely to be "economic" in nature than "mere possession."  There is also a more significant nexus between production of child pornography and the interstate market for child pornography because any production, even if only for personal use, impacts the market.

In any event, as this Court recently recognized, see United States v. Gallenardo, CR 07-04-BU-DWM (May 31, 2007 Order) (dkt #20), the Ninth Circuit's decision in McCoy was effectively overruled by the Supreme Court's decision in Gonzales v. Raich, 545 U.S. 1 (2005).  In Raich, the Supreme Court reversed a Ninth Circuit decision holding the federal Controlled Substances Act ("CSA") unconstitutional as applied to the intrastate manufacture and possession of marijuana for medical purposes.  545 U.S. at 9.  In doing so, the Court relied heavily on Wickard.  According to the Court,

> Wickard . . . establishes that Congress can regulate purely intrastate activity that is not itself "commercial," in that it is not produced for sale, if it concludes that failure to regulate that class of activity would undercut the regulation of the interstate market in that commodity.
>
> The similarities between this case and Wickard are striking.  Like the farmer in Wickard, respondents are cultivating, for home consumption, a fungible commodity

5

>    for which there is an established, albeit illegal,
>    interstate market.  Just as the Agricultural Adjustment
>    Act was designed "to control the volume [of wheat]
>    moving in interstate and foreign commerce in order to
>    avoid surpluses ..." and consequently control the
>    market price, a primary purpose of the CSA is to
>    control the supply and demand of controlled substances
>    in both lawful and unlawful drug markets.  In Wickard,
>    we had no difficulty concluding that Congress had a
>    rational basis for believing that, when viewed in the
>    aggregate, leaving home-consumed wheat outside the
>    regulatory scheme would have a substantial influence on
>    price and market conditions. . . .  Given the
>    enforcement difficulties that attend distinguishing
>    between marijuana cultivated locally and marijuana
>    grown elsewhere, and concerns about diversion into
>    illicit channels, we have no difficulty concluding that
>    Congress had a rational basis for believing that
>    failure to regulate the intrastate manufacture and
>    possession of marijuana would leave a gaping hole in
>    the CSA.

Id. at 18-19, 22 (citations omitted).  The Court also distinguished Lopez and Morrison.  It noted those cases dealt with non-economic activities, namely the possession of a gun in a school zone and gender-motivated crimes of violence.  Id. at 23-25.  Although the respondents in Raich did not intend to sell the marijuana they produced for medicinal purposes, the Court determined the activities regulated by the CSA—the production, distribution, and consumption of narcotics—were nevertheless economic.  Id. at 25.  The Court observed there is an established, and lucrative, interstate market for controlled substances and prohibiting the intrastate possession or manufacture of controlled substances is a rational means of regulating that product.  Id. at 26.

If home-grown marijuana produced for purely personal use can be regulated by Congress as part of a larger scheme to control the interstate market for controlled substances, then Congress can regulate so-called home-grown child pornography produced for purely personal use in an effort to control the interstate marketing of child pornography.  The need for such regulation is in fact highlighted by the allegations in this case.  Although the photographs Overton allegedly produced of his step daughter were not transported in interstate commerce, Overton is alleged to have received and possessed other images of child pornography that were transported in interstate commerce.  As part of its scheme to control the latter, Congress can regulate the former. In fact, each court of appeals to address Congress' regulation of child pornography since <u>Raich</u> has concluded Congress may criminalize the production or possession of child pornography that was made using materials that were mailed, shipped, or transported in interstate commerce, even if the pornography itself was not transported in interstate commerce or mailed. <u>United States v. Maxwell</u>, 446 F.3d 1210, 1214-19 (11th Cir. 2006); <u>United States v. Mugan</u>, 441 F.3d 622, 627-30 (8th Cir. 2006); <u>United States v. Chambers</u>, 441 F.3d 438, 454-55 (6th Cir. 2006);  <u>United States v. Forrest</u>, 429 F.3d 73, 78 (4th Cir. 2005); <u>United States v. Jeronimo-Bautista</u>, 425 F.3d 1266, 1273 (10th Cir. 2005).

In light of the Supreme Court's decision in Raich, this Court can no longer rely on McCoy's holding. The application of child pornography statutes to persons who produce child pornography using materials transported in interstate commerce is a valid exercise of Congress' power under the Commerce Clause. Overton's production of pornographic images of his step daughter substantially affects interstate commerce regardless of the fact that he did not, or did not intend to, transmit the images across state lines.

### III.  Conclusion

Accordingly, IT IS HEREBY ORDERED that Overton's Motion to Dismiss Counts I and II of the Indictment (dkt #20) is DENIED.

Dated this 26th day of September, 2007.

_____
DONALD W. MOLLOY, Chief Judge
United States District Court