IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BUTTE DIVISION



FILED
MAY 09 2019
Clerk, U.S District Court
District Of Montana
Missoula

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff/Respondent,<br><br>vs.<br><br>WALTER MERLE OVERTON,<br><br>Defendant/Movant. | Cause No. CR 07-28-BU-DWM<br>CV 18-77-BU-DWM<br><br>ORDER DENYING § 2255 MOTION AND DENYING CERTIFICATE OF APPEALABILITY |

This case comes before the Court on Defendant/Movant Walter Merle Overton's motion to vacate, set aside, or correct his sentence, pursuant to 28 U.S.C. § 2255. Overton is a federal prisoner proceeding pro se.

## I. Preliminary Review

Before the United States must respond, the Court must determine whether "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b); *see also* Rule 4(b), Rules Governing Section 2255 Proceedings for the United States District Courts. A petitioner "who is able to state facts showing a real possibility of constitutional error should survive Rule 4 review." *Calderon v. United States Dist. Court*, 98 F.3d 1102, 1109 (9th Cir. 1996) ("*Nicolas*") (Schroeder, C.J., concurring) (referring to Rules Governing § 2254 Cases). But the Court should "eliminate the

1

burden that would be placed on the respondent by ordering an unnecessary answer." Advisory Committee Note (1976), Rule 4, Rules Governing § 2254 Cases, *cited in* Advisory Committee Note (1976), Rule 4, Rules Governing § 2255 Proceedings.

## II. Background

On July 19, 2007, a grand jury indicted Overton on one count of using or coercing a minor to take part in sexually explicit conduct for the purpose of producing a visual record, a violation of 18 U.S.C. § 2251(a) (Count 1); one count of being in custody or control of the minor and permitting her to be involved in Count 1, a violation of 18 U.S.C. § 2251(b) (Count 2); one count of receipt of child pornography, a violation of 18 U.S.C. § 2252A(a)(2) (Count 3); one count of possession of child pornography, a violation of 18 U.S.C. § 2252A(a)(5)(B) (Count 4); and a forfeiture count. *See* Indictment (Doc. 1) at 2–4. Chief Federal Defender Anthony Gallagher was appointed to represent Overton. *See* Order (Doc. 4).

A bench trial commenced on November 5, 2007. *See* Minutes (Doc. 30). Overton was convicted on all counts. *See* Findings and Conclusions (Doc. 34) at 1–15.

After trial, Overton moved to dismiss either Count 1 or Count 2 and either Count 3 or Count 4 because, he argued, Counts 1 and 2 were the same offense, and Counts 3 and 4 were the same offense. The Court held that Counts 1 and 2 were

different offenses under *Blockburger v. United States*, 284 U.S. 299 (1932), because each required proof of an element the other did not. *See* Order (Doc. 44) at 2–5 (citing *United States v. Hickey*, 367 F.3d 888, 891–92 (9th Cir. 2004)).

The Court also found that Counts 3 and 4 were not based on one act. Count 3 was "based on the fact that Overton searched for child pornography on the Internet using search words including 'teen,' and then viewed and downloaded some of the images returned as a result of his searches." Order (Doc. 44) at 7. Overton's conviction on Count 4 was based in part on "his possession of the three sexually explicit photographs that he took." *Id.* "Overton saved these photographs from a digital camera to his home computer and then used a memory stick to transfer the images from his home computer to his work computer and back again." *Id.* Count 4 was also based in part on the fact that Overton "created the 'F' partition on his hard drive where he saved the images of child pornography," then "retained the images he viewed and downloaded on the hard drive of his computer." *Id.* Consequently, Overton's motion to dismiss was denied. *Id.* at 8.

A presentence report was prepared. Overton's advisory guideline range was 188 to 235 months. Counts 1 and 2 carried a mandatory minimum sentence of 15 years (180 months) and a maximum of 30 years. Count 3 carried a mandatory minimum of five years and a maximum of 20. Count 4 carried a maximum penalty of ten years. *See* Sentencing Tr. (Doc. 59) at 10:12–22. Overton was sentenced to

3

serve 235 months in prison on Counts 1, 2, and 3, 120 months on Count 4, all concurrent, and a life term of supervised release. *See* Minutes (Doc. 46); Sentencing Tr. at 38:23–39:14; Judgment (Doc. 48) at 2–3.

Overton appealed. He disputed the sufficiency of the evidence on Counts 1 and 2, maintained his double-jeopardy arguments, and challenged his sentence. On June 18, 2009, the Ninth Circuit Court of Appeals affirmed Overton's convictions and sentence. *See United States v. Overton*, 573 F.3d 679, 701 (9th Cir. 2008).

Overton petitioned for writ of *certiorari*. The United States Supreme Court denied the petition on October 20, 2009. *See* Clerk Letter (Doc. 64) at 1.

Overton's conviction became final on October 20, 2009. *See Gonzalez v. Thaler*, 565 U.S. 134, 150 (2012). He filed his § 2255 motion more than nine years later, on December 7, 2018. *See* 28 U.S.C. § 2255(f)(1); *Houston v. Lack*, 487 U.S. 266, 276 (1988).

### III. Claims and Analysis

Overton's motion was filed more than eight years after the one-year limitations period expired. But the time bar is not the principal defect in the motion.

Overton's claims are reorganized here, but all are addressed on the merits.

#### A. Double Jeopardy

The Court of Appeals decided that Overton's convictions did not violate the

4

Double Jeopardy Clause. Its decision is the law of the case. Overton presents no reason, other than his apparent disagreement, *see* Br. in Supp. (Doc. 66) at 11–12, to revisit the matter. *See United States v. Renteria*, 557 F.3d 1003, 1006-07 (9th Cir. 2009); *United States v. Phillips*, 367 F.3d 846, 856 & nn.32-35 (9th Cir. 2004); *United States v. Alexander*, 106 F.3d 874, 876 (9th Cir. 1997).

At any rate, Overton's arguments are not valid. As to Counts 1 and 2, he claims, "to say that single person can be both an active participant and a knowing bystander at the same time, is absurd." Br. in Supp. at 12. But § 2251(a) and (b) are aimed at active participants and knowing custodians (not "bystanders"). A person can certainly be a parent or guardian without using or coercing one's child to participate in sexually explicit activity. And a parent or guardian can knowingly permit a child to be sexually exploited without using her or coercing her to participate. The fact that Overton personally sexually exploited the victim and also had responsibility for her custody made his conduct doubly illegal, not double jeopardy.

As to Counts 3 and 4, Overton cites a recent Eighth Circuit case, *United States v. Morrissey*, 895 F.3d 541, 547–49 (8th Cir. 2018), for the proposition that possession of child pornography is a lesser included offense of receipt of child pornography. *See* Br. in Supp. at 10. There, however, the court's ruling was based on the fact that "the jury could have convicted Morrissey of both receipt and

possession based on *the same image or images* found on the Dell laptop." *Id.* at 548 (emphasis added). That would indeed be double jeopardy. But Overton was convicted on Count 3 based on images he downloaded from the internet and on Count 4 based on photographs he took himself.

This claim is denied.

### B. "Crime of Violence"

Overton states he was classified a violent offender when he arrived in federal prison. He assumes this designation had something to do with the definition of a "crime of violence" in 18 U.S.C. § 16(b). That definition is unconstitutionally vague. *See Sessions v. Dimaya,* __ U.S. __, 138 S. Ct. 1204, 1210, 1223 (2018).

Even assuming the prison relied on § 16(b), Overton's classification does not originate in anything the Court may redress under 28 U.S.C. § 2255. Neither the statutes Overton violated nor his advisory guideline calculation required interpretation or construction of the phrase "crime of violence."

This claim is denied.

### C. Interstate Commerce Element

Overton makes several objections regarding the interstate commerce element. *See* Br. in Supp. (Doc. 66) at 14–32. His arguments certainly swing for the fences, but they are contradicted by established law.

6

Contrary to Overton's assertion, *see id.* at 14, evidence of an interstate exchange of goods or services is not required, although it was present in his case in the computer and other equipment he used to commit his crimes. Congress regulates markets within which goods and services are exchanged, not merely specific instances of exchange. Wholly intrastate activity can affect the market. Congress has the "power to regulate purely local activities that are part of an economic 'class of activities' that have a substantial effect on interstate commerce," so long as there is a "rational basis" for concluding that intrastate activities, "taken in the aggregate, substantially affect interstate commerce." *Gonzalez v. Raich*, 545 U.S. 1, 16–17, 22 (2005). Congress can also regulate the channels and the instrumentalities of interstate commerce. *See id.* at 16 (citing *Perez v. United States*, 402 U.S. 146, 150 (1971)). The objects of Congress's regulatory power in Overton's case were not (or not only) sexually explicit images of children but the devices he used to produce, receive, and store those images.

The interstate commerce elements of §§ 2251(a) and (b) and 2252A(a)(5)(B) are met if the United States proves a sexually explicit "visual depiction was produced using materials that have been mailed, shipped, or transported in interstate or foreign commerce by any means, including by computer." 18 U.S.C. § 2251(a), (b) (2003). The United States proved Overton used a digital camera and a memory stick to produce and then copy and store sexually explicit images of a

7

young girl on his computer. That conduct underlay Counts 1, 2, and 3. Section 2252A(a)(2) prohibits receiving such images that have been "transported in interstate or foreign commerce by any means, including by computer." 18 U.S.C. §§ 2252A(a)(2)(A), (B). Overton admitted downloading child pornography from the internet. That conduct underlay Count 4. The United States introduced evidence at Overton's trial showing that "[t]he two computers" he used "were manufactured in some place other than Montana[,] and the items used to photograph" the victim "were transported in interstate or foreign commerce." Findings and Conclusions at 6 ¶ 24, 7 ¶ 26; Trial Tr. (Doc. 57) at 166:3–21, 167:22–168:2.

Overton claims the phrase "substantial effect on interstate commerce" is too vague and capacious and "the federal government is interpreting [it] any way it wants." Br. in Supp. at 19. The Supreme Court defines the phrase, and it has not generated the type of "inconsistency and seeming randomness," Br. in Supp. at 21, that the Court recognized and put an end to in *Johnson v. United States*, __ U.S. __, 135 S. Ct. 2551 (2015), and *Dimaya*. Dissenting Justices' opinions, *see, e.g.*, *id.* at 27–28 (quoting or paraphrasing *Taylor v. United States*, __ U.S. __, 136 S. Ct. 2074, 2082–85 (2016) (Thomas, J., dissenting alone)), do not change the majority's decisions. The United States was not required to prove that Overton personally knew his conduct would meet the element. *See United States v.*

8

*Robinson*, 137 F.3d 652, 654–55 (1st Cir. 1998) (quoting *United States v. Feola*, 420 U.S. 671, 677 (1975), and *United States v. X-Citement Video, Inc.*, 513 U.S. 64, 72–73 n.3 (1994)). Overton's argument that Congress may regulate only lawful activity and must prohibit unlawful activity, *see* Br. in Supp. at 24–25, while unpersuasive, appears moot in light of Congress' prohibition of Overton's unlawful activity.

Overton interprets the Constitution to reserve to States the sole prerogative to enact and enforce criminal laws within their territorial jurisdiction. *See* Br. in Supp. at 25–26. But the existence of constitutional and statutory provisions governing public lands does not imply that all powers given to Congress apply only on public lands. Similarly, the provisions giving Congress jurisdiction over four felony crimes—counterfeiting, piracy and crimes committed on the high seas, offenses against the law of nations, and treason against the United States—exclude the States from prosecuting these crimes. *See* U.S. Const. art. I, § 8, cls. 6, 10, art. III, § 3, cl. 2 (cited in Br. in Supp. at 29). These are crimes a State might understandably believe it could punish, so it is not surprising the Constitution asserted the exclusivity and uniformity of the federal interest. The reverse, that Congress cannot define or punish any other crimes, does not logically follow. Congress provided exclusive federal jurisdiction over matters in bankruptcy, too, federal civil jurisdiction is not limited to bankruptcy.

The "come to rest" line of case law, *see* Br. in Supp. at 17, was overruled in 1977. *See United States v. Robbins*, 579 F.2d 1151, 1153 (9th Cir. 1978) (holding that *Scarborough v. United States*, 431 U.S. 563 (1977), abrogated, among other decisions, *United States v. Cassity*, 509 F.2d 682 (9th Cir. 1974), *cited in* Br. in Supp. at 17). "[I]t does not matter how long the transportation in interstate or foreign commerce occurred before the defendant received" the item in question, unless the statute says it matters. *See Robbins*, 579 F.2d at 1153 (citing *Barrett v. United States*, 423 U.S. 212, 216 (1976)). And 18 U.S.C. §§ 2251(a) and (b) and 2252A(a)(2) and (5)(B) do not say it matters.

Overton's position might have had some merit under *United States v. McCoy*, 323 F.3d 1114 (9th Cir. 2003), but the *McCoy* court's reasoning was rejected by *Raich*, as the Ninth Circuit recognized in *United States v. McCalla*, 545 F.3d 750, 756 (9th Cir. 2008).

All claims regarding the interstate commerce element are denied.

### D. Ineffective Assistance of Counsel

Overton makes two claims of ineffective assistance of counsel. Such claims are governed by *Strickland v. Washington*, 466 U.S. 668 (1984). At this stage of the proceedings, Overton must allege facts sufficient to support an inference (1) that counsel's performance fell outside the wide range of reasonable professional assistance, *id.* at 687-88, and (2) that there is a reasonable probability that, but for

counsel's unprofessional performance, the result of the proceeding would have been different, *id.* at 694.

Overton claims that counsel was ineffective because he failed to present on direct appeal the claims Overton now raises (at least, those not based on *Dimaya* or *Johnson*). *See* Br. in Supp. at 8. This portion of his ineffective assistance allegation fails because the claims Overton raises have no merit. It is not unreasonable for counsel to fail to raise meritless claims.

Overton also alleges that counsel was ineffective because he advised Overton to waive trial by jury and be tried by the Court. Br. in Supp. (Doc. 66) at 8–9. Few reasonable federal criminal defense attorneys would contend that bench trial is an unreasonable strategy in a case involving child pornography. Overton displays no comprehension of the response his conduct was likely to elicit in reasonable jurors. Overton is correct that the Court found the prosecution's witnesses credible and Overton's own testimony not credible. But that does not support an inference that the Court was biased from the start or that any reasonable juror would have found Overton credible and the prosecution's witnesses not credible. The facts Overton alleges do not support an inference either that counsel's performance was deficient or that there was a reasonable probability of a different outcome. This claim is denied.

### IV. Certificate of Appealability

11

"The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a), Rules Governing § 2255 Proceedings. A COA should issue as to those claims on which the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The standard is satisfied if "jurists of reason could disagree with the district court's resolution of [the] constitutional claims" or "conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).

None of Overton's claims meets even the relatively low threshold required for a COA. His double jeopardy claims cannot be relitigated and, at any rate, he mistakes the legal and evidentiary bases of his convictions on the four counts of the Indictment. The phrase "crime of violence" might have played some role in Overton's placement in prison, but it played no role in his convictions or sentences. Overton's multiple, sweeping objections to the interstate commerce element of the statutes governing child pornography lack support in existing law, misapprehend the evidentiary bases of his convictions, or both. And Overton does not identify any respect in which counsel's performance was unreasonable or any reasonable probability of a different outcome. There is no reason to encourage further proceedings. A COA is not warranted.

Accordingly, IT IS HEREBY ORDERED as follows:

1. Overton's motion to vacate, set aside, or correct the sentence under 28 U.S.C. § 2255 (Docs. 65, 66) is DENIED.

2. A certificate of appealability is DENIED. The Clerk of Court shall immediately process the appeal if Overton files a Notice of Appeal.

3. The Clerk of Court shall ensure that all pending motions in this case and in CV 18-77-BU-DWM are terminated and shall close the civil file by entering judgment in favor of the United States and against Overton.

DATED this 8th day of May, 2019.

Donald W. Molloy
United States District Court

13